# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Federal Trade Commission, | No. SACV 19-01165 AG (KESx) |
| Plaintiff, | **PRELIMINARY INJUNCTION** |
| v. | |
| 8 Figure Dream Lifestyle LLC, et al., | |
| Defendants. | |

On June 12, 2019, Plaintiff, Federal Trade Commission, filed its Complaint for a Permanent Injunction and other Equitable Relief under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108 (Docket No. 2). Under Fed. R. Civ. P. 65(b), the FTC also filed an *ex parte* application for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against 8 Figure Dream Lifestyle LLC, JL Net Bargains Inc., Kappy Enterprises LLC, Millionaire Mind Enterprises LLC, OEA LLC (a/d/b/a Online Entrepreneur Academy, d/b/a 14 Day Champion Challenge, d/b/a 14 Day Challenge), Spirit Consulting Group Inc., John A. Bain, Alex Dee, Brian M. Kaplan, and Jerrold S. Maurer (a/k/a Jerry Maurer) (collectively "Defendants"). (Docket No. 3).

The Court granted the application, issuing a temporary restraining order ("TRO") on June 13, 2019, including an asset freeze, expedited discovery, and other equitable relief. (Docket Nos. 28 and 29). The Court ordered Defendants to appear at a hearing on June 24, 2019, to show cause why a preliminary injunction should not issue. On June 21, Defendants moved to continue the show cause hearing to July 8. (Docket No. 31). In response, the Court ordered the parties to appear for a status conference on June 24. (Docket No. 34). At the June 24 status conference, all parties informed the Court that they had stipulated to extend and abide by the TRO until a preliminary injunction hearing. (Docket No. 36). The Court subsequently rescheduled the preliminary injunction hearing for July 19, 2019. (Docket No. 36). Before that hearing, the FTC and Defendant OEA LLC ("OEA") agreed to entry of a preliminary injunction for the duration of this litigation. The terms of the stipulated preliminary injunction are as follows:

**FINDINGS OF FACT**

A. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B. In order to avoid litigation and as part of the process to settle the action between the FTC and OEA, the FTC and OEA have agreed to entry of this Order.

C. The relief granted by this Order is appropriate equitable relief permitted by the FTC Act and within the inherent equitable powers of the Court. *See, e.g., FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1110-13 (9th Cir. 1982) (holding that Section 13(b) of the FTC Act "provides a basis" for a preliminary injunction "freezing assets" and other equitable relief); *FTC v. American Nat'l Cellular, Inc.*, 810 F.2d 1511, 15-12-14 (9th Cir. 1987) (upholding preliminary injunction including asset freeze and appointment of a receiver).

D. Weighing the equities and considering the FTC's likelihood of ultimate success on the merits, a preliminary injunction with an asset freeze and other equitable relief is in the public interest.

E. This Court has the authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); Federal Rule of Civil Procedure 65; and the All Writs Act, 28 U.S.C. § 1651.

F. The FTC is an independent agency of the United States and no security is required of any agency of the United States for the issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A. "**8 Figure Dream Lifestyle Corporate Defendants**" means 8 Figure Dream Lifestyle LLC; JL Net Bargains Inc.; Kappy Enterprises LLC; Millionaire Mind Enterprises LLC; and Spirit Consulting Group Inc. and each of their subsidiaries, affiliates, successors, and assigns.

B. "**8 Figure Dream Lifestyle Defendants**" means the 8 Figure Dream Lifestyle Corporate and Individual Defendants, individually, collectively, or in any combination.

C. "**8 Figure Dream Lifestyle Individual Defendants**" means John A. Bain, Alex Dee, Brian M. Kaplan, and Jerrold S. Maurer, a/k/a Jerry Maurer, individually, collectively, or in any combination.

D. "**Defendants**" means the 8 Figure Dream Lifestyle Defendants and the OEA Defendants, individually, collectively, or in any combination.

E. "**Document**" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant

messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate Document within the meaning of the term.

    F. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

    G. **"OEA Corporate Defendants"** means JL Net Bargains Inc.; Kappy Enterprises LLC; Millionaire Mind Enterprises LLC; OEA LLC, also d/b/a Online Entrepreneur Academy, d/b/a 14 Day Champion Challenge, d/b/a 14 Day Challenge; and Spirit Consulting Group Inc. and each of their subsidiaries, affiliates, successors, and assigns.

    H. **"OEA Defendants"** means the OEA Corporate and Individual Defendants, individually, collectively, or in any combination.

    I. **"OEA Individual Defendants"** means Alex Dee, Brian M. Kaplan, and Jerrold S. Maurer, a/k/a Jerry Maurer, individually, collectively, or in any combination.

    J. **"Temporary Monitor"** means the monitor appointed in Section XI of this Order.

# ORDER

## I. PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that OEA, its officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are preliminarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

A. Consumers who purchase OEA's purported money-making opportunities will earn or are likely to earn substantial income; and

B. Any other fact material to consumers concerning any good or service, such as: the total costs; any refund policy; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## II. PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that OEA, its officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A. Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B. Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security

number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that OEA may disclose such identifying information to a law enforcement agency, to its attorneys as required for its defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

### III.   ASSET FREEZE

**IT IS FURTHER ORDERED** that OEA and its officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.   Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any assets that are:

1. owned or controlled, directly or indirectly, by any Defendant;
2. held, in part or in whole, for the benefit of any Defendant;
3. in the actual or constructive possession of any Defendant; or
4. owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.

B.   Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant;

C. Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any corporate defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor; or

D. Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

The assets affected by this Section shall include: (1) all assets of OEA as of the time this Order is entered; and (2) assets obtained by OEA after this Order is entered if those assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order. This Section does not prohibit any repatriation of foreign assets specifically required by this Order.

Nothing in this Order shall prohibit OEA from seeking relief from the provisions of Section III after entry of this Order.

## IV. DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of OEA or any asset that has been owned or controlled, directly or indirectly, by OEA; held, in part or in whole, for the benefit of OEA; in the actual or constructive possession of OEA; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of,

any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by OEA;

    (b)    has held, controlled, or maintained custody, through an account or otherwise, of any Document or asset associated with credits, debits, or charges made on behalf of OEA, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or

    (c)    has extended credit to OEA, including through a credit card account, shall:

    A.    Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or asset, as well as all Documents or other property related to such assets, except by further order of this Court; provided, however, that this provision does not prohibit an individual defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit;

    B.    Deny any person access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of OEA, either individually or jointly, or otherwise subject to access by OEA;

    C.    If they have not done so already in compliance with the TRO previously issued in this action (Docket No. 28), provide Plaintiff's counsel, within three (3) days of receiving a copy of this Order, a sworn statement setting forth, for each asset or account covered by this Section:

        1.    The identification number of each such account or asset;

        2.    The balance of each such account, or a description of the nature and value of each such asset as of the close of business on the

|   |   |   |
|---|---|---|
| 1 |   | day on which this Order is served, and, if the account or other |
| 2 |   | asset has been closed or removed, the date closed or removed, |
| 3 |   | the total funds removed in order to close the account, and the |
| 4 |   | name of the person or entity to whom such account or other |
| 5 |   | asset was remitted; and |
| 6 | 3. | The identification of any safe deposit box, commercial mail |
| 7 |   | box, or storage facility that is either titled in the name, |
| 8 |   | individually or jointly, of OEA, or is otherwise subject to |
| 9 |   | access by OEA; and |

D. If they have not done so already in compliance with the TRO previously issued in this matter (Docket No. 28), upon the request of Plaintiff's counsel, promptly provide Plaintiff's counsel with copies of all records or other Documents pertaining to any account covered by this Section or asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

Provided, however, that this Section does not prohibit any repatriation of foreign assets specifically required by this order.

## V. FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that if OEA has not done so already in compliance with the TRO previously issued in this action (Docket No. 28), within five (5) days of issuance of this Order, OEA shall prepare and deliver to Plaintiff's counsel:

A. Completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Corporate Defendant) for OEA; and

B. Completed **Attachment B** (IRS Form 4506, Request for Copy of a Tax Return) for OEA.

## VI. FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that, if OEA has not already done so in compliance with the TRO previously issued in this action (Docket No. 28), within five (5) days following issuance of this Order, OEA shall:

A. Provide Plaintiff's counsel with a full accounting, verified under oath and accurate as of the date of this Order, of all assets, Documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of OEA; (2) held by any person or entity for the benefit of OEA or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by OEA; or (3) under the direct or indirect control, whether jointly or singly, of OEA;

B. Take all steps necessary to provide Plaintiff's counsel access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment C**.

C. Transfer to the territory of the United States any and all Documents and assets located in foreign countries which are: (1) titled in the name, individually or jointly, of OEA; (2) held by any person or entity for the benefit of OEA or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by OEA; or (3) under the direct or indirect control, whether jointly or singly, of OEA; and

D. The same business day as any repatriation, (1) notify counsel for Plaintiff of the name and location of the financial institution or other entity that is the recipient of such Documents or assets; and (2) serve this Order on any such financial institution or other entity.

## VII. NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that OEA, its officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

A. Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that OEA's assets have been fully repatriated pursuant to this Order; or

B. Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all OEA's assets have been fully repatriated pursuant to this Order.

## VIII. CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports concerning OEA pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

## IX. PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that OEA, its officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A. Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or

indirectly, Documents that relate to: (1) the business, business practices, assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

     B.    Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' assets.

## X.    REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that OEA, its officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff's counsel with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XI.    APPOINTMENT OF TEMPORARY MONITOR

**IT IS FURTHER ORDERED** that Thomas Seaman is appointed as Temporary Monitor for OEA until final judgment is entered as to OEA or OEA otherwise ceases to be a Defendant in this action. The Temporary Monitor shall be solely the agent of this Court in acting as Temporary Monitor under this Order. The Temporary Monitor shall be accountable directly to this Court.

## XII. DUTIES AND AUTHORITY OF TEMPORARY MONITOR

**IT IS FURTHER ORDERED** that the Temporary Monitor is directed and authorized to accomplish the following:

A. Identifying and reviewing all marketing materials, advertisements, sales scripts, training materials, videos, webinars, websites, posts to message boards or social media groups (*e.g.*, Facebook groups) controlled by OEA, call logs, call detail records, or other Documents that reflect marketing, advertising, promotion, distribution, offer for sale or sale of goods or services by OEA during the pendency of this Order;

B. Identifying and reviewing all educational, informational, or training content provided by OEA to OEA's customers and clients during the pendency of this Order, including videos, webinars, websites, group chats (including on Skype or social media platforms), and posts to message boards or social media groups (*e.g.*, Facebook groups) controlled by OEA. This provision includes OEA content for OEA's 14 Day Challenge (or 14 Day Champion Challenge), Champion Advocates, curriculum and Success Tier courses, and Mastermind courses;

C. Identifying and reviewing recorded information that is played for customers and prospective customers who place telephone calls to OEA;

D. Advising the Court and all parties to this action of concerns the Temporary Monitor has regarding any OEA materials or content reviewed by the Temporary Monitor;

E. Copying or imaging Documents that the Temporary Monitor deems necessary for purposes of preservation or otherwise carrying out the Temporary Monitor's duties pursuant to this Order;

F. Within 30 days of this Order, providing notice of the pendency of this action, *FTC v. 8 Figure Dream Lifestyle LLC et al.*, No. SACV 19-1165-AG (KESx), to existing members, clients, customers, and contractors of OEA; and

G. Choosing, engaging, and employing support personnel as the Temporary Monitor deems advisable or necessary to assist the Temporary Monitor's performance of duties pursuant to this Order.

### XIII. COOPERATION WITH THE TEMPORARY MONITOR

**IT IS FURTHER ORDERED** that OEA and its officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them shall fully cooperate with and assist the Temporary Monitor. This cooperation and assistance shall include, but is not limited to, providing information to the Temporary Monitor that the Temporary Monitor deems necessary to exercise the authority and discharge the responsibilities of the Temporary Monitor under this Order, including in response to requests for information from the Temporary Monitor, and without the need for subpoena or further order.

### XIV. INTERFERENCE WITH THE TEMPORARY MONITOR

**IT IS FURTHER ORDERED** that OEA and its representatives, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are hereby restrained and enjoined from:

A. Refusing to cooperate with the Temporary Monitor or the Temporary Monitor's duly authorized agents in the exercise of their duties or authority under any order of this Court;

B. Failing to provide any assistance or information requested by the Temporary Monitor in connection with the performance of the Temporary Monitor's duties under this Order; and

C. Interfering with the Temporary Monitor's efforts to identify and review the OEA materials or content subject to review by the Temporary Monitor pursuant to this Order.

## XV. COMPENSATION OF TEMPORARY MONITOR

**IT IS FURTHER ORDERED** that the Temporary Monitor is entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred, from the assets of OEA frozen pursuant to Section III of this Order and Section IV of the TRO, including OEA bank accounts at Wells Fargo Bank, N.A. and Comerica Bank. The Temporary Monitor shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Temporary Monitor shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XVI. ACCESS TO BUSINESS RECORDS

**IT IS FURTHER ORDERED** that OEA, if OEA has not already done so in compliance with the TRO previously issued in this action (Docket No. 28), allow the Commission's employees and agents access to OEA's business records to inspect and copy Documents.

    A.    **Electronic Records and Residential Addresses**: Within five days of receiving notice of this Order, OEA must produce to the Commission for inspection, inventory, and/or copying the following Documents that are stored with any Electronic Data Host, or within OEA's custody or control and found at any personal residence:

        1.    All customer information (including names, phone numbers, addresses, email addresses, and payment information) for any person who purchased products or services from any Defendant.

        2.    All Documents relating to the marketing and sale of Defendants' products or services, including scripts, videos, advertisements, webpages, flyers, emails, mailers, brochures, agendas, slideshows, talking points, sales training materials, marketing plans and strategies,

and internal communications relating to marketing and sales.

3. All video or audio recordings of calls with persons who purchased products or services from any Defendant.

4. All complaints from persons who purchased products or services from any Defendant.

5. All financial records and accounting information relating to Defendants, including profit and loss statements, annual reports, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns, and 1099 forms.

6. All Documents relating to the amount of commissions earned by purchasers of products or services from any Defendant.

7. All Documents relating to any income disclosure prepared by any Defendant, including the underlying data used in any income disclosure.

8. All Documents relating to Defendants' refund policies, including the number of people who requested refunds, the number of people who received refunds, the basis for denial of refund requests, training provided to Defendants' employees relating to handling refund requests, and internal communications relating to the development of Defendants' refund policies and procedures.

The Commission shall return produced materials pursuant to this Paragraph within five (5) business days of completing said inventory and copying. Production of Documents pursuant to this Paragraph shall not provide grounds for OEA to object to any subsequent request for Documents served by Plaintiff.

## XVII. DISTRIBUTION OF ORDER BY OEA

**IT IS FURTHER ORDERED** that OEA shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, attorney, spouse, subsidiary, division, and representative of OEA, and shall, within ten (10) days from the date of entry of this Order, and provide Plaintiff with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, OEA shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with OEA to disregard this Order or believe that they are not bound by its provisions.

## XVIII. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order as well as all other filings in this action may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon OEA or any person (including any financial institution) that may have possession, custody or control of any asset or Document of OEA, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XIX. CORRESPONDENCE AND SERVICE ON PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

P. Connell McNulty
Thomas L. Harris
Federal Trade Commission
600 Pennsylvania Avenue, NW (CC-8528)
Washington, DC 20580
Fax: 202-326-3395
Email: pmcnulty@ftc.gov; tharris1@ftc.gov

## XX.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**SO ORDERED**, this 19th day of July, 2019, at 2:45p.m.

_____
ANDREW J. GUILFORD
UNITED STATES DISTRICT JUDGE